# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **TED PERKINS,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:07-cv-808-PMW** |
| **MICHAEL J. ASTRUE,**<br>**Commissioner of Social Security,** | |
| **Defendant.** | **Magistrate Judge Paul M. Warner** |

Before the court is Ted Perkins's ("Plaintiff") appeal of Michael J. Astrue's (the "Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401-434. After careful consideration of the written briefs and the complete record, the court has determined that oral argument would not be helpful or necessary in this case.

## RELEVANT BACKGROUND

On February 28, 2003-, Plaintiff applied for DIB, alleging disability beginning on January 7, 2002, due to the effects of Tourette's syndrome.[1] Plaintiff's applications were denied initially on March 27, 2003,[2] and upon reconsideration on September 3, 2003.[3] On September 18, 2003,

---

[1] *See* docket no. 4, Administrative Record ("Tr. ____"), 72, 96-98.

[2] *See* Tr. 72, 82-84.

[3] *See* Tr. 71, 76-78.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"),[4] and that hearing was held on October 5, 2004.[5]  An ALJ issued a written decision on January 13, 2005, determining that Plaintiff was not entitled to DIB.[6]  On March 14, 2005, Plaintiff filed a request for review of the ALJ's decision.[7]  On September 23, 2005, the Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ for further proceedings.[8]

Another hearing was held before the ALJ on July 14, 2006.[9]  The ALJ issued another written decision on March 28, 2007, determining that Plaintiff was not entitled to DIB.[10]  The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform his past work as a staff accountant and an accounting clerk and that other jobs existed in the economy that Plaintiff could perform, such as a bookkeeper, payroll clerk, and timekeeper.[11]  Plaintiff filed a timely request for review of the ALJ's decision.[12]  On August 29, 2007, the Appeals Council

---

[4]  *See* Tr. 74.

[5]  *See* Tr. 290-323.

[6]  *See* Tr. 162-73.

[7]  *See* Tr. 174-77.

[8]  *See* Tr. 178-80.

[9]  *See* Tr. 279-89.

[10]  *See* Tr. 34-53.

[11]  *See* Tr. 51-52.

[12]  *See* Tr. 15, 272-77.

denied Plaintiff's request for review,[13] making the ALJ's March 28, 2007 decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

On October 24, 2007, Plaintiff filed his complaint in this case, which was assigned to Chief District Judge Tena Campbell.[14] Thereafter, both parties consented to having a United States Magistrate Judge conduct all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[15] Consequently, the case was reassigned to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(c) and rule 73 of the Federal Rules of Civil Procedure.[16]

On December 18, 2007, the Commissioner filed his answer to Plaintiff's complaint,[17] and the court received the Administrative Record the same day.[18] Plaintiff filed his opening brief on March 4, 2008.[19] On April 9, 2008, an addendum to the administrative record was filed.[20] After

---

[13] *See* Tr. 8-11.

[14] *See* docket no. 1.

[15] *See* docket no. 5.

[16] *See id.*

[17] *See* docket no. 3.

[18] *See* docket no. 4.

[19] *See* docket nos. 7.

[20] *See* docket nos. 10-11.

receiving two extensions of time,[21] the Commissioner filed his responsive brief on June 2,

2008.[22]  Plaintiff filed his reply brief on June 30, 2008.[23]

### STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual

findings are supported by substantial evidence in the record and whether the correct legal

standards were applied."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and

citation omitted).  The Commissioner's findings, "if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  It requires more than a

scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084 (quotations and citation

omitted).  "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor

substitute [its] judgment for that of the [ALJ]."  *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th

Cir. 2006) (quotations and citation omitted).  "The failure to apply the correct legal standard or to

provide this court with a sufficient basis to determine that appropriate legal principles have been

followed [are] grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005)

(quotations and citation omitted).

---

[21]  *See* docket nos. 8-9, 12-13.

[22]  *See* docket no. 14.

[23]  *See* docket no. 15.

A five-step evaluation process has been established for determining whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).  If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.  *See* 20 C.F.R. § 404.1520(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity.  If [the claimant] is, disability benefits are denied.  If [claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that his impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R. § 404.1520(a)(4)(i)-(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . .  If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.  If not, the evaluation proceeds to the fourth step . . . ."  *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. § 404.1520(a)(4)(iii).  At the fourth step, the claimant must show that the impairment prevents performance of his "past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv).  "If the claimant is able to perform his previous work, he is not

disabled." *Williams*, 844 F.2d at 751.  If, however, the claimant is not able to perform his

previous work, he "has met his burden of proof, establishing a prima facie case of disability."  *Id*.

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."  *Id*.  At

this step, the burden of proof shifts to the Commissioner, and the decision maker must determine

"whether the claimant has the [RFC] to perform other work in the national economy in view of

his age, education, and work experience."  *Id*.; *see* 20 C.F.R. § 404.1520(a)(4)(v).  If it is

determined that the claimant "can make an adjustment to other work," 20 C.F.R.

§ 404.1520(a)(4)(v), he is not disabled.  If, on the other hand, it is determined that the claimant

"cannot make an adjustment to other work," *id*., he is disabled and entitled to benefits.

<u>ANALYSIS</u>

In support of his claim that the Commissioner's decision should be reversed, Plaintiff

argues that the ALJ erred:  (1) by failing to properly consider medical opinion evidence, (2) in

evaluating Plaintiff's credibility, and (3) in the findings regarding Plaintiff's ability to work.  The

court will address each argument in turn.

### I.  Medical Opinion Evidence

### A.  Dr. Teynor

Plaintiff argues that the ALJ failed to properly consider the opinions of one of Plaintiff's

treating physicians, Dr. Teynor.

> In deciding how much weight to give a treating source opinion, an
> ALJ must first determine whether the opinion qualifies for
> controlling weight.  To make this determination, the ALJ . . . must
> first consider whether the opinion is well[ ]supported by medically
> acceptable clinical and laboratory diagnostic techniques.  If the

6

answer to this question is "no," then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well[ ]supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

Even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. §] 404.1527.  Those factors are:  (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Under the regulations, the agency rulings, and [Tenth Circuit] case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion . . . that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotations and citations omitted)

(sixth alteration in original); *see also* 20 C.F.R. § 404.1527(d).

As with other evidentiary matters, when an ALJ is considering medical opinion evidence,

it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.  *See, e.g.*,

*Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244,

1247 (10th Cir. 1988).  In addition, a physician's opinion that a claimant is disabled "is not

7

dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); *see also* 20 C.F.R. § 404.1527(e)(2).

### 1. Controlling Weight

In this case, the ALJ determined that Dr. Teynor's opinions about Plaintiff's functional limitations were not entitled to controlling weight because they were inconsistent with other substantial evidence in the record.[24]  Specifically, the ALJ noted that Dr. Teynor's stated limitations, which indicated that Plaintiff could not perform any work, were inconsistent with the evidence from Dr. Comings, an expert in Tourette's syndrome, suggesting that Plaintiff could perform the job of accounting at home.[25]  The ALJ also stated that Plaintiff's own testimony contradicted Dr. Teynor's opinions about functional limitations.[26]  In particular, the ALJ noted Plaintiff's testimony indicating that he had (1) received unemployment compensation for approximately fifteen months, which required him to hold himself out as ready, willing, and able to work; (2) sent out at least 100 resumes in an attempt to find employment; and (3) educated himself about web design and had been self-employed in that area.[27]

Plaintiff argues that the ALJ erred by failing to give Dr. Teynor's opinion controlling weight.  The court disagrees.  The ALJ set forth a sufficient basis for determining that Dr.

---

[24]  *See* Tr. 50.

[25]  *See* docket no. 11, Addendum to Administrative Record; *see also* Tr. 324.

[26]  *See* Tr. 50.

[27]  *See id*.

Teynor's opinions about Plaintiff's functional limitations were inconsistent with other substantial evidence in the record. *See Langley*, 373 F.3d at 1119; *see also* 20 C.F.R. § 404.1527(d)(2). The court sees no error in the ALJ's determination that Dr. Teynor's opinion was not entitled to controlling weight.

### 2. Deference and Weight

After determining that Dr. Teynor's opinions regarding Plaintiff's limitations were not entitled to controlling weight, the ALJ concluded that they were not persuasive.[28] In reaching that conclusion, the ALJ provided specific examples of internal inconsistencies in Dr. Teynor's progress notes and other documents he authored.[29] The ALJ also provided specific examples of inconsistencies between documents Dr. Teynor authored and other evidence in the record. *See* 20 C.F.R. § 404.1527(d)(4) (providing that "the more consistent an opinion is with the record as a whole, the more weight" it will be given). In addition, the ALJ provided specific reasons for determining that Dr. Teynor was not familiar with other information in Plaintiff's case record.[30] *See id*. § 404.1527(d)(6) (providing that "the extent to which an acceptable medical source is familiar with the other information in [a claimant's] case record [is a] relevant factor[] that [the Commissioner] will consider in deciding the weight to give to a medical opinion").

---

[28] *See* Tr. 50-51.

[29] *See* Tr. 50.

[30] *See* Tr. 50-51.

Plaintiff argues that the ALJ erred in this analysis.  Again, the court disagrees.  As indicated above, the ALJ's written decision demonstrates that she properly relied upon several of the factors set forth in 20 C.F.R. § 404.1527(d) in reaching her conclusion that Dr. Teynor's opinions regarding Plaintiff's functional limitations were not persuasive.

Based upon the foregoing, the court concludes that the ALJ did not err with respect to her consideration of Dr. Teynor's medical opinion evidence.

## B.  Recontact

Plaintiff briefly argues that the ALJ was required to recontact Dr. Teynor concerning his opinions.  That argument fails.  The ALJ would have been required to recontact Dr. Teynor only if the ALJ had determined that the evidence from Dr. Teynor was inadequate to determine whether Plaintiff was disabled.  *See* 20 C.F.R. § 404.1512(e)(1).  For the reasons set forth above, the ALJ determined that Dr. Teynor's opinions were neither entitled to either controlling weight nor persuasive.  Even without that opinion evidence, the ALJ was able to determine that Plaintiff was disabled.  In short, the court sees no reason why the ALJ was required to recontact Dr. Teynor in this case.

## C.  State Agency Opinions

Plaintiff also asserts that the ALJ improperly weighed the opinions of the State agency medical consultants.  That argument likewise fails.  In her decision, the ALJ indicated that she considered and weighed the opinions of the State agency medical consultants, and she provided

specific reasons for the favorable weight she chose to assign to those opinions.[31]  The ALJ noted

that the State agency medical consultants had provided specific reasons in support of their

opinions and that their opinions were well grounded in the evidence in the record.[32]  While

Plaintiff may disagree with the State agency medical consultants' opinions, that does not mean

that the ALJ erred by relying upon them.  *See* Social Security Ruling ("SSR") 96-6p.

> In summary, the court concludes that the ALJ did not err in her consideration of the
medical opinion evidence in this case.

## II.  Credibility

> Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility.  In general,
"[c]redibility determinations are peculiarly the province of the finder of fact, and [this court] will

not upset such determinations when supported by substantial evidence."  *Kepler v. Chater*, 68

F.3d 387, 391 (10th Cir. 1995) (quotations and citation omitted).  Although credibility

determinations "should be closely and affirmatively linked to substantial evidence," *id.*

(quotations and citation omitted), they "do[] not require a formalistic factor-by-factor recitation

of the evidence."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

> In this case, the ALJ included nearly two pages of discussion concerning Plaintiff's
credibility.[33]  In that discussion, the ALJ made several findings in support of her conclusion that

---

[31] *See* Tr. 51.

[32] *See id.*

[33] *See* Tr. 47-48.

Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.  Based on Plaintiff's own testimony, the ALJ found that Plaintiff had (1) received unemployment compensation for approximately fifteen months, which required him to hold himself out as ready, willing, and able to work; (2) sent out at least 100 resumes in an attempt to find employment; (3) educated himself about web design and had been self-employed in that area; and (4) developed some management strategies to alleviate his symptoms.[34]  After reaching her conclusion about Plaintiff's credibility based on those factors, the ALJ went on to discuss Plaintiff's history of noncompliance with his treatment "for the sake of completeness" of the discussion relative to credibility.[35]  Based on the medical evidence and Plaintiff's own testimony, the ALJ found that Plaintiff not always been complaint with his treatment, including discontinuing some of his medications.[36]

At the outset of his brief, Plaintiff asserts that the ALJ failed to make any findings regarding Plaintiff's credibilty and, instead, simply included a conclusory statement that Plaintiff's statements concerning his symptoms were not entirely credible.  However, as noted above, the ALJ did in fact make specific findings and articulated the factors and evidence she relied on in reaching her determination about Plaintiff's credibility.[37]  While Plaintiff does discuss the evidence before the ALJ, he simply attempts to minimize the weight of the evidence

---

[34]  *See* Tr. 47.

[35]  Tr. 48.

[36]  *See* Tr. 47-48.

[37]  *See id*.

supporting the ALJ's conclusion and emphasize the weight of the evidence that favors his

position. As noted previously, it is not this court's role to reweigh the evidence before the ALJ.

*See Madrid*, 447 F.3d at 790. Indeed, the court reviews "only the sufficiency of the evidence, not

its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (emphasis omitted).

Furthermore, to support this argument, Plaintiff relies almost exclusively on the opinions of Dr.

Teynor, which the court has already determined were properly given little weight by the ALJ.

Plaintiff also asserts that the ALJ failed to engage in the proper analysis before relying on

Plaintiff's failure to comply with treatment as factor in evaluating Plaintiff's credibility. *See,*

*e.g.*, *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). Notably, however, Plaintiff

admits that "the ALJ does not specifically link the issue of compliance with prescribed treatment

to credibility."[38] That admission notwithstanding, Plaintiff asserts that the issue of

noncompliance was "central" to the ALJ's decision.[39] As the court noted above, after the ALJ

reached her conclusion about Plaintiff's credibility based on certain articulated factors, she went

on to discuss Plaintiff's history of noncompliance with his treatment "for the sake of

completeness" of the discussion relative to credibility.[40] Plaintiff claims that "[o]ne can only

guess as to what this 'completeness' refers."[41] The court has determined that it is unnecessary to

---

[38] Docket no. 7 at 9.

[39] *Id*.

[40] Tr. 48.

[41] Docket no. 7 at 9.

resolve this issue.  Even if the court disregards the ALJ's discussion about Plaintiff's history of

noncompliance, the ALJ made sufficient findings to support her credibility determination.

In summary, the court concludes that the ALJ made sufficient findings to support her

decision to discount Plaintiff's credibility.  In addition, after reviewing the relevant portions of

the record cited by the ALJ in support of those findings, the court has determined that the cited

portions constitute substantial evidence in support of the findings and that the findings are

closely and affirmatively linked to that substantial record evidence.  *See Kepler*, 68 F.3d at 391.

Accordingly, the court will not disturb the ALJ's conclusion about Plaintiff's credibility.

### III.  Findings Regarding Plaintiff's Ability to Work

Plaintiff argues that the ALJ committed multiple errors in her findings and determinations

regarding Plaintiff's ability to work.

### A.  Past Relevant Work

In order for an ALJ's determination that a claimant can perform his past relevant work to

be proper, the ALJ's decision must contain the following findings of fact:

1.  A finding of fact as to the individual's RFC.
2.  A finding of fact as to the physical and mental
    demands of the past job/occupation.
3.  A finding of fact that the individual's RFC would
    permit a return to his or her past job or occupation.

SSR 82-62; *see also Winfrey v. Chater*, 92 F.3d 1017, 1023-25 (10th Cir. 1996).  Despite

Plaintiff's claims of error with respect to the ALJ's determination that Plaintiff could perform his

past relevant work, the court's review of the ALJ's decision shows that the ALJ made each of the

findings required by SSR 82-62.

14

With respect to the first finding, ALJ's decision contains over nine pages of discussion relating to Plaintiff's RFC.[42]  In that discussion, the ALJ provided specific reasons to support her conclusion that Plaintiff retained the RFC to perform work at all exertional limitations that allowed him to work either alone or in a separate location from others.  The court concludes that the ALJ's discussion of Plaintiff's RFC demonstrates that the ALJ made the requisite findings with respect to Plaintiff's RFC.

As to the second finding, the ALJ's decision shows that she considered Plaintiff's past relevant work, which included work as accountant and accounting clerk.[43]  The ALJ considered the testimony of the vocational expert ("VE"), which included a description of the exertional level and skill requirements for those jobs.[44]  The ALJ also noted that the VE reduced the number of the jobs in the national economy to accommodate the limitation that Plaintiff be able to work alone or in a separate location from others.[45]  In her consideration of that evidence, the ALJ made the requisite findings about the demands of Plaintiff's past work.

As for the final finding, the ALJ specifically found that Plaintiff's past relevant work as an accountant and accounting clerk did not require the performance of work-related activities precluded by Plaintiff's RFC.[46]  Moreover, given the substance of the first two findings, it was

---

[42] *See* Tr. 42-51.

[43] *See* Tr. 51.

[44] *See* Tr. 51, 267, 312-22.

[45] *See* Tr. 51, 267.

[46] *See* Tr. 51.

clear that the demands of Plaintiff's past relevant work did not conflict with his RFC.[47]   The court concludes that the ALJ made the third finding required by SSR 82-62.

The ALJ made all three of the findings required by SSR 82-62 and *Winfrey*.  *See* SSR 82-62; *see also Winfrey*, 92 F.3d at 1023-25.  In addition, those findings are supported by substantial evidence in the record.  Accordingly, the court concludes that the ALJ did not err by concluding that Plaintiff was able to perform his past relevant work.

## B.  VE

Plaintiff presents several arguments with respect to the VE's testimony.  First, Plaintiff asserts that the VE's testimony indicating that on-site performance was the accounting industry standard is inconsistent with the hypothetical given to the VE, which indicated that Plaintiff would have to work alone or in a separate location.  The court sees no such inconsistency.  As noted by the Commissioner, the VE's responses to the ALJ's interrogatories clearly indicate that while on-site performance was the accounting industry standard, the VE believed Plaintiff could still perform his past relevant work alone or in a separate location from others.[48]   Further, as noted above, the VE recognized and accounted for that limitation by reducing the number of jobs available in the national economy.[49]

---

[47]   *See* Tr. 42-51.

[48]   *See* Tr. 267.

[49]   *See id*.

16

Second, Plaintiff argues that the ALJ violated his right to due process by sending interrogatories to the VE rather than having the VE testify at the second hearing.  That argument fails.  Prior to sending the interrogatories to the VE, the ALJ sent a proposed set of interrogatories to Plaintiff's counsel, along with a letter indicating that he had fourteen days to file any response or objections to the proposed interrogatories.[50]  Plaintiff's counsel responded by letter to indicate his objections to the proposed interrogatories.[51]  However, that letter did not indicate that he viewed the interrogatories as a violation of Plaintiff's due process rights, nor did it indicate that he wished to hold an additional hearing so that he could cross-examine the VE.  Moreover, as noted by the Commissioner, Plaintiff and his counsel were present at the second hearing, and there is nothing in the transcript of that hearing to indicate that they were somehow deprived of an opportunity to question the vocational expert.[52]  By failing to raise this issue below, even when provided with an opportunity to do so, Plaintiff waived any due process argument he had with respect to ALJ's decision to send interrogatories to the VE.  *See, e.g.*, *Coffin v. Sullivan*, 895 F.2d 1206, 1212 (8th Cir. 1990).

### C.  Accommodation

Plaintiff argues that the ALJ's stated limitation that Plaintiff must be allowed to work either alone or in a separate location from others amounts to an "accommodation."  In essence,

---

[50]  *See* Tr. 29-31.

[51]  *See* Tr. 23.

[52]  *See* Tr. 279-89

17

Plaintiff argues that the limitation prevents him from performing either "the functional demands and job duties of a particular past relevant job" or "the functional demands and job duties as generally required by employers throughout the economy." SSR 82-61. As noted previously, however, the VE recognized and accounted for that limitation by reducing the number of jobs available in the national economy.[53] Even after that reduction, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform.[54] The VE's reduction of the number of jobs in the national economy simply accounted for the ALJ's limitation, leaving the number of jobs that, in the VE's opinion, would allow Plaintiff to work alone or in a separate location from others. In short, the court does not view the ALJ's stated limitation as an "accommodation," nor does it see any error in the VE's reduction of the number of jobs to account for that limitation.

### D. Transferability

Plaintiff also argues that the ALJ failed to address the issue of transferability of skills at step five of the sequential evaluation process. That argument is without merit. In relevant part, SSR 82-41 provides:

> Transferability of skills is an issue *only* when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations *but does prevent the performance of past relevant work* (PRW), and that work has been determined to be skilled or semiskilled.

---

[53] *See* Tr. 267.

[54] *See* Tr. 51-52.

SSR 82-41 (emphasis added).  In this case, the ALJ concluded that Plaintiff was capable of performing his past relevant work.[55]  Accordingly, transferability of skills was not an issue in this case, *see id.*, and the ALJ did not err by failing to address it.

Based upon the foregoing, the court concludes that the ALJ did not err in her findings and determinations regarding Plaintiff's ability to work.

## **CONCLUSION AND ORDER**

The court concludes that all of Plaintiff's arguments fail.  Accordingly, **IT IS HEREBY ORDERED** that the Commissioner's decision in this case is **AFFIRMED** in all respects.

**IT IS SO ORDERED**.

DATED this 24th day of March, 2009.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[55] *See* Tr. 51.